**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **TERRANCE TERRELL** | § | |
| **CARRIERE** | § | |
| | § | CIVIL ACTION NO: _____ |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| **BROWN-N-BROWN DOMINO'S** | § | **JURY DEMAND HEREIN** |
| **PIZZA, LLC** | § | |
| *Defendant* | § | |
| | § | |

---

### COMPLAINT AND DEMAND FOR JURY TRIAL

---

NOW COMES Plaintiff, **TERRANCE TERRELL CARRIERE**, by and through his attorney **JAMES E. SUDDUTH, III**, for his Complaint against **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, who hereby states as follows:

---

### JURISDICTION AND VENUE

---

1. Plaintiff, **TERRANCE TERRELL CARRIERE**, brings action under Title VII of the Civil Rights Act of 1964 as it appears at 42 U.S.C. § 2000 et seq., and the Americans With Disabilities Act (42 USC § 12102 et seq.) ("ADA").

2. This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States;

b. 28 U.S.C. § 1343 (3) and (4), which give district courts jurisdiction over actions to secure civil rights extended by the United States government;

3. It is a jurisdictional requirement of this Court that the Plaintiff, **TERRANCE TERRELL CARRIERE**, has filed a complaint with the Equal Employment Opportunity Commission (EEOC).  Plaintiff has done so and the complaint is attached as Exhibit 1.

4. After the filing of an EEOC complaint, Plaintiff must initiate suit within ninety (90) days of receiving the notice of the right to sue.  Plaintiff has received this notice for his complaint.  This notice was sent on October 21, 2016 and is attached as Exhibit 2.  Plaintiff, brings action in this court within the ninety (90) day limit.

5. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in this district and more specifically within this division.

---

## PARTIES

---

6. Plaintiff is a citizen of the United States and resides in the City of Lake Charles, Parish of Calcasieu, State of Louisiana.

7. Plaintiff is an African American male, and as such, a member of a protected class.

8. Plaintiff suffers from multiple disabilities, including lumbar spinal stenosis and degenerative disease of the spine, refractive amblyopia, debilitating migraines, cervical herniated discs and major depression, and as such this also qualifies him as a member of a protected class.

9. Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, is a business located at 2107 MacArthur Drive, Orange, Texas 77630 and was the Plaintiff's place of employment from May 4, 2015 until August 21, 2016.

10. The District Manager for Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, at the time of Plaintiff's employment was Randy Brown, Jr.

11. The Assistant Managers at the time of Plaintiff's employment for Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, were Tiffany Hickingbottom and Abigail Hickingbottom. Tiffany Hickingbottom was the girlfriend of Randy Brown, Jr.  Abigail Hickingbottom was the sister of Tiffany Hickingbottom.

12. Randy Brown, Sr. and Kathy Brown are the franchise owners of Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**.  Randy Brown, Sr. and Kathy Brown are also married and the parents of Randy Brown, Jr.  They both worked in the main office of Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, during the time of Plaintiff's employment.

## FACTUAL ALLEGATIONS

13. Plaintiff, **TERRANCE TERRELL CARRIERE ("CARRIERE")** began his employment with the Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC,** in May of 2015.

14. **CARRIERE** was employed as a General Manager by the Defendant.

15. The causes of action that form the basis of this petition find their origin beginning in September of 2015.  At that time Randy Brown, Jr. ("Brown, Jr."), Tiffany Hickingbottom ("T. Hickingbottom"), and Abigail Hickingbottom ("A. Hickingbottom") starting leaving

post-it sticky notes all around the store stating "Terrance you are so dumb", "Clean the office dumb-ass" and "Terrance you are an idiot". It should be noted that Brown, Jr.'s, A. Hickingbottom and T. Hickingbottom are all Caucasian. **CARRIERE** asked repeatedly that this stop and that if there was an issue to please come and talk to him. **CARRIERE** asked other management that authority not be undermined and embarrassed and not to humiliate him in the open in front of his staff.

16. Upon good-faith belief, **CARRIERE** alleges that he was harassed by A. Hickingbottom, T. Hickingbottom and Brown, Jr. after filing an EEOC charge number 461-2015-00604 in September 4, 2015 against RPM Domino's Pizza. The only way Brown, Jr. could know this information was by talking to RPM Pizza, John Richards, Vice President of RPM Pizza Domino's Pizza and the corporate office.

17. After the September 4, 2015 EEOC charge was filed, **CARRIERE** essentially had his weekly staff scheduling duties taken away. Every Sunday he prepared the staff members' schedule for the following work week and sent to the main office of Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**. However, staff members started going to T. Hickingbottom to schedule their work days instead of **CARRIERE**, even though this was a part of **CARRIERE's** assigned duties as General Manager. T. Hickingbottom would change the staff work schedules, and this further undermined the authority and respect of **CARRIERE** to his staff members.

18. On April 16, 2016, T. Hickingbottom texted **CARRIERE**, "You're an idiot Terrance Randy told me that I'm not allow to talk to you so when you said Monday I said call Randy so y don't you call lil Randy I AM NOT OPENING MONDAY".

19. To further illustrate how **CARRIERE** was not allowed to function in his capacity as General Manger, T. Hickingbottom sent **CARRIERE** a text about the schedule and how she would not follow it, stating, "When the office calls me on Monday to change it I'm going to go ahead and do it sorry I do not care what you say Terrence the browns and I are in charge of this store".

20. The next day, on April 17, 2016, T. Hickingbottom again called **CARRIERE** and asked if he talked to Brown, Jr.  **CARRIERE** stated he had not and asked if that was all he needed, and she responded to that, "What did you just tell me BOY?" **CARRIERE** again asked if that was all she needed and she responded that it wasn't and hung up on **CARRIERE.** Later that same night, **CARRIERE's** vehicle was damaged, including having his window busted out, and **CARRIERE** reported the incident to the police.  **CARRIERE** called the main office for a copy of the surveillance video.   According to the police the damage appeared to be from a brick or hammer.    **CARRIERE** believes, upon good faith information and belief, that the damages to **CARRIERE's** property was a hate crime because of the previous conversation with T. Hickingbottom that night.

21. Kathy Brown ("K. Brown) said she could not see anything on security surveillance cameras, even though she watched the security camera at all times. She stated the camera on the parking lot was not working.  K. Brown would normally report any outages on the surveillance camera to **CARRIERE,** thus **CARRIERE** could not in good faith believe the excuse being provided.  **CARRIERE** was scared to go to work after this incident because he was afraid of the next violent incident that might occur.  However, **CARRIERE** needed the insurance the position provided because of all his health problems; **CARRIERE** felt

like he could not quit, but was actively trying to secure another General Manager position in Louisiana.

22. **CARRIERE** was not informed of meetings which all other staff were advised in group text messages from Brown, Jr.  **CARRIERE** was the only employee left out of these meeting messages.  This is documented in a text from **CARRIERE** to Brown, Jr. in August of 2016 where **CARRIERE** had to ask if there was a meeting scheduled for the following Monday because he never received the group text sent to everyone else.

23. **CARRIERE** was singled out by Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, as the only manager never invited to any functions, not even the office Barbeque. Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, invited all their store managers to a business trip held in Las Vegas, but **CARRIERE** was not invited.

24. On multiple occasions, including June 29, 2016, **CARRIERE** sent Patrick Doyle ("Doyle), CEO of Domino's Worldwide, certified letters informing him of the conditions of the building of Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**.  **CARRIERE** outlined the dangerous electrical conditions, the wall fires, the lighting being out and the leaks all over the building.  **CARRIERE** also reported the damage to his vehicle in the parking lot of Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, store and how nothing was done by other management and supposedly the outside camera was busted so no one was seen doing the damage.  **CARRIERE** also informed him that he feared losing his job, but that these conditions needed to be reported.

25. **CARRIERE** knows that Doyle received the certified letters, as he personally signed for one of the certified letters.  On July 18, 2016, Doyle's secretary, Laura Kallil, sent **CARRIERE** an email asking for details about his store and its location, his resume and

information about **CARRIERE**. The last letter **CARRIERE** sent to Patrick Doyle was a couple of weeks before **CARRIERE** was fired.

26. **CARRIERE** wrote Doyle, to seek help in getting employed by his one of his stores in Louisiana and was met with no response other than the above referenced email. He also sent his resume multiple times to corporate, and was well qualified as he has over sixteen years' experience in the pizza industry.

27. On July 27, 2016, **CARRIERE** felt like he had no option than to file an EEOC complaint for race discrimination and retaliation under EEOC charge number 461-2016-01558 for issues against Corporate Domino's Pizza. **CARRIERE** began experiencing consistent instances of retaliation ultimately creating a hostile work environment, which is detailed more fully below. The targeting, intimidation, retaliation, and harassment intensified in light of the EEOC charge that had been filed by **CARRIERE**.

28. On July 31, 2016, Plaintiff was written up by Brown, Jr. who stated that if the Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, did not make three stars on the next Operations Evaluation Report ("OER") then he would be fired.  On the written reprimand Brown Jr. referenced the following OER visits: namely, August 1, 2015, December 11, 2015 and May 26, 2016.

29. In reference to the August 1, 2015 OER visit, A. Hickingbottom was the manager on duty and not **CARRIERE**. This OER resulted in a score where zero ("0") stars were earned. A. Hickingbottom used dough right off the truck in front of the OER coach.  She also had dates wrong on ingredients, including meats, sauces and cheese.  **CARRIERE** maintains this was done on purpose as she had at least five years' experience with Domino's and knew about the OER visit and didn't prepare. Crucially, Defendant, **BROWN-N-BROWN**

**DOMINO'S PIZZA, LLC,** OER policies states that there is a zero-tolerance policy for a zero-star rating on an OER visit.  However**,** A. Hickingbottom faced no repercussions for this score.  Both A. Hickingbottom and T. Hickingbottom would use their relationship with Brown, Jr. as leverage against other staff members and threatened to call Brown, Jr. and get anyone she wanted fired.  **CARRIERE** requested on seven different occasions their removal from the store, but nothing was ever done.

30. Regarding the December 11, 2015 OER visit once again A. Hickingbottom was the manager on duty and not **CARRIERE**. After the December 11, 2015 OER visit, A. Hickingbottom, Assistant Manager and sister of T. Hickingbottom, stated everyone knew the OER coach was coming and everybody in the company and corporate knew **CARRIERE** would never get his bonus and no one wanted him around.

31. On the May 26, 2016 and July 31, 2016 OER visits, **CARRIERE** received no advance notice of these re-visits. The normal procedure is that for every OER under three stars, there is a date and time for the next OER revisit.  The time and date for the follow-up visits was always emailed to Randy Brown, Sr.   However, **CARRIERE** repeatedly would ask when the revisits for the OER would occur and no one would tell **CARRIERE.**  This was not the procedure for follow-up OER visits as the manager was supposed to be there for these visits to address any issues and conduct a walk through with the OER coach.

32. On the May 26, 2016 OER visit, Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC,** lost points due to the condition of the building, black mold and broken fixtures and appliances. Brown, Jr. knew of all these issues, because **CARRIERE** brought them to his attention, however Brown Jr. did not properly repair them by bringing in licensed professionals.

33. On August 21, 2016, **CARRIERE** was fired because Brown, Jr. referred to the first write up of July 31, 2016 stating **CARRIERE** was required to self OER weekly and **CARRIERE** only did one.  This is not accurate as **CARRIERE** did in fact perform a self OER with all of his management staff and wasn't allowed to perform the third as he was fired before he had a chance to complete it.

34. Additionally, Brown, Jr. stated the **CARRIERE** had not made immediate improvements in Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC,** operations.  However, **CARRIERE** had in fact been teaching and retraining staff, deep cleaning and painting the building with no help from upper management.  **CARRIERE** even drafted and distributed his own study guide for the other staff members.  Brown, Jr. was repeatedly told by **CARRIERE** as evidenced from texts to him that the A/C was broken along with various vents, but it was never fixed.  **CARRIERE**'s store was the only one in which Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC,** refused to address the maintenance, structural and equipment issues.

35. **CARRIERE** compiled a list of repairs and supplies needed for Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC,** and sent them to the main office every week with the rest of his store's paperwork. including the leaks throughout the building and water getting in the building when it rained.  **CARRIERE** also reported electrical issues to management such as the oven vent hood that would not function, outlets that would not work, lighting that was out in the lobby and make line temperatures that were out of the appropriate range and was an ongoing problem.

36. **CARRIERE** requested supplies that were never received such as more aprons, broken prep tub lids that wouldn't seal and more prep bottles and lids.  None of these supplies were

provided to **CARRIERE**, making him incapable of performing a satisfactory job as General Manager.

37. **CARRIERE** performed his job duties as best he could with the difficulties and road blocks upper management threw in his way.  **CARRIERE** followed policy from performing the five star opening routine, the OER readiness checklist, the seven-day cleaning routine and sent all the required documentation to the office daily.  All the maintenance issues were reported within twenty-four hours per policy, but nothing was ever repaired.

38. The building the Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, is located in the oldest building in the company and falling apart.  **CARRIERE** repeatedly notified Brown, Jr. of the condition of the building and requested repairs.  **CARRIERE** sent texts to Brown, Jr. indicating the cooler was leaking and the various vent hood failures that at one point failed to the point of suffocating his staff in the kitchen. **CARRIERE** also texted Brown, Jr. stating the pole sign would not come on and the vent hood to the oven and the bottom part of the make line was barely blowing.

39. On August 22, 2016, the day after **CARRIERE** was fired, Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC,** hired crews of workers to come into the store and fix all the repairs that had never been addressed while **CARRIERE** was the General Manager.

*(Remainder of Page Intentionally Left Blank)*

---

## FIRST CAUSE OF ACTION:
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### *Pursuant to 42 U.S.C. § 2000 et. seq.*

---

40. **CARRIERE** incorporates and restates each of the above paragraphs as if fully set forth herein.

41. **CARRIERE** is (1) a member of a protected class as an African American male, (2) is qualified for the position of General Manager, (3) suffered adverse employment action as demonstrated by the termination of his employment, and (4) was treated less fairly than others situated similarly as demonstrated by his written reprimands and subsequent termination.

42. **CARRIERE** completed his assigned tasks according to protocol and had no other instances of reprimand during his employment other than the OER reports where A. Hickingbottom was the manager on charge when the two previously referenced OER reports where taken.  Even though **CARRIERE** was not the manager in charge at their OER visits, he was written up erroneously.

43. After a little over a year of employment with Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, **CARRIERE** was terminated in his capacity as a General Manager for allegedly not making immediate improvements after the July 31, 2016 OER report.  As previously referenced, this was far from the truth, and **CARRIERE** was stalled in all actions to fix the problems on the OER report, by his own management.  He was not given the tools to fix the building and his authority was diminished at every turn.  He was mocked and humiliated in front of his staff, and the embarrassment from the above referenced incidents still is a source of emotional pain, in addition to, the physical pain he

experiences due to his disabilities and not being able or allowed to take off to go to his doctor visits.

44. Defendant in good faith cannot believe in this proffered reason for termination since, upon information and belief, **CARRIERE** had no other allegations lodged against him other than the one erroneous reprimand that he received in lieu of the proper party A. Hickingbottom.

45. However, even if it could be said that **CARRIERE** failed to perform, an immediate termination for a relatively minor issue is disparate treatment. For example, his July 31, 2016 written reprimand contained erroneous information, including attributing the previous two star OER on the May 26, 2016 visit and the zero star OER on the August 1, 2015 visit to **CARRIERE.** The manager on shift for these visits was in fact A. Hickingbottom, and not **CARRIERE.** A. Hickingbottom, a Caucasian female, performed far worse than **CARRIERE** on the OER visit and was not terminated or even given a written reprimand. Per company policy, A. Hickingbottom should have been immediately terminated.

46. **CARRIERE** reported to Human Resources regarding these incidents with improper reprimands based off Assistant Manager, A. Hickingbottom, being in charge at time of the OER visits attributed to **CARRIERE**. **CARRIERE** believes this disparate treatment of the **CARRIERE** was based on his race and retaliation. A. Hickingbottom upon information and belief suffered no reprimand for her actions.

47. According to company policy, immediate removal of A. Hickingbottom was not only justified, but required per the OER and Defendant, **BROWN-N-BROWN DOMINO'S PIZZA LLC,** guidelines. Of significant importance is that A. Hickingbottom is a

Caucasian woman. **CARRIERE** is an African-American and his poor OER led to immediate consequences not faced by his Caucasian Shift Manager on duty. See ¶ 29.

48. Another incident of disparate treatment involves the behavior of A. Hickingbottom yet again. A. Hickingbottom cursed Lauren Hagan, an employee at **CARRIERE**'s store, and aggressively started throwing items at her. This was witnessed on video surveillance, and yet nothing happened to her. Lauren Hagan resigned over this incident. After this incident, **CARRIERE** requested A. Hickingbottom be fired again, yet to no avail.

49. Upon good-faith belief, **CARRIERE** alleges that he was harassed by A. Hickingbottom, T. Hickingbottom and Brown, Jr. and after filing an EEOC charge number 461-2016-01558 on a corporate matter, was then retaliated against by termination because he had made said charge.

50. Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC,** terminated **CARRIERE** for racially motivated reasons and proffered a pre-textual justification in lieu thereof. This is directly contradictory to the evidence which will prove that immediate improvements to the store were produced by **CARRIERE,** and the ones that could not be remedied were the fault of Brown, Jr. as **CARRIERE** continuously asked for maintenance and repairs to a dilapidated store.

51. Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC** intentionally destroyed his personal files kept at his desk and deleted emails from his company server from various co-workers and supervisors which would collaborate **CARRIERE's** allegations of workplace harassment and further prove that the alleged incident on July 31, 2016 was the proffered pre-textual reason for termination of **CARRIERE's** employment.

52. **CARRIERE** was targeted, intimated and discriminated against due to his race and harassed by Brown, Jr., T. Hickingbottom, and A. Hickingbottom due to his previous complaints filed against Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, the Domino's corporate office and RPM Domino's Pizza.  They embarrassed and humiliated him in front of his staff and created a hostile work environment.

53. Upon good faith belief, based on disparate treatment, **CARRIERE** alleges that he was terminated on the basis of racial discrimination as an African American citizen and in retaliation, for raising the issue of racial discrimination.

54. Section 2000(e)(2)(a) of Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

55. Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, failed to act in accordance with Section 2000 et. seq. of Title VII of the Civil Rights Act of 1964 by (1) subjecting him to disparate treatment compared to his Caucasian peers who were also managers, in the form of immediate termination, (2) failing to remedy or address any of the complaints **CARRIERE** made surrounding the hostile work environment, and (3) failing to act in accordance with 42 U.S.C.A. § 2000e-3(a) by retaliating against **CARRIERE** by magnifying the hostile work environment and harassment after the filing of charges with the EEOC to complain of these unlawful employment practices.

56. Wherefore, **CARRIERE** asks this Honorable Court to find Defendant, Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, liable for the violations of Title VII of the Civil Rights Act of 1964 as it appears at 42 U.S.C. § 2000 et seq.

---

## SECOND CAUSE OF ACTION:
## VIOLATION OF AMERICANS WITH DISABILITIES ACT
### *Pursuant to 42 USC § 12102 et seq.*

---

57. To establish a prima facie case under the ADA, **CARRIERE** must establish that: (1) he is disabled within the meaning of the ADA, (2) that he is qualified and able to perform the essential functions of his job, and (3) his employer took adverse employment action against him because of his disability, *See e.g., Talk v. Delta Airlines, Inc*., 165 F.3d 1021, 1024 (5th Cir. 1999).

58. **CARRIERE** has multiple disabilities, including lumbar spinal stenosis and degenerative disease of the spine, refractive amblyopia, debilitating migraines, cervical herniated discs and major depression all of which the upper management was aware of when Plaintiff was hired. These disabilities substantially affect **CARRIERE's** daily life and activities, however despite these disabilities **CARRIERE** was still able to perform the essential functions of his job.

59. **CARRIERE** sometimes needs a cane to walk because of the back and neck disabilities. However, plaintiff was repeatedly denied leave to go to doctor appointments. Brown, Jr. said he did not care about **CARRIERE's** disability, and no one he knew had more than one doctor; Plaintiff had at least four doctors for all his disabilities.

60. The Defendant's, **BROWN-N-BROWN DOMINO'S PIZZA, LLC's,** other management continuously and intentionally harassed **CARRIERE** when **CARRIERE** requested time for ongoing and necessary medical evaluations by **CARRIERE**'s numerous physicians.

61. In late 2015, while **CARRIERE** was at a doctor appointment, T. Hickingbottom texted **CARRIERE** asking why he was at the doctor, what time he arrived, and how long he was staying.   She went on state that **CARRIERE** will never amount to anything and specifically, "YOUR A FAILURE Terrance".

62. **CARRIERE** repeatedly requested vacation days from Brown, Jr.  beginning on July 17, 2016, on July 24, 2016, on July 31, 2016 and on August 7, 2016. **CARRIERE** wanted to use his vacation time to go to his doctors.  However, his verbal and written requests were never even acknowledged even though **CARRIERE** informed him he needed the days to go to the doctor.

63. In August of 2016, even though **CARRIERE** sent work excuses and paperwork re his appointments from his physicians to the main office of Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC,** every week, Brown, Jr. stated **CARRIERE** was lying.  His subsequent requests to have time off to go to his doctor appointments were denied. The Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, prevented **CARRIERE** from seeking assistance from staff and required **CARRIERE** to work in unsafe environment given **CARRIERE**'s mobility, visual limitations, and depression.  At no time were any reasonable accommodations offered or provided to assist CARRIERE in performing his duties.

64. Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, continually and intentionally harassed **CARRIERE** when **CARRIERE** requested time for ongoing and necessary medical monitoring evaluations by plaintiff's numerous physicians. **CARRIERE**, during the course and scope his employment beginning in May 4, 2015

through August 21, 2016 was required to obtain doctor excuses for each and every doctor visit he went on even though none of his other co-workers were required to do so.

65. At all relevant times, **CARRIERE** repeatedly raised these requests for accommodations, and was repeatedly ignored.

66. The lighting throughout the building was never properly repaired and it was inadequate due to **CARRIERE's** limited vision.  Also the air conditioner was never properly fixed and provided increased strain on **CARRIERE**, though reported countless times because of his health conditions.  The floor was full of broken tiles all through the store, and it was dangerous due to **CARRIERE's** mobility issues.  Also, the constant embarrassment and humiliation in front of staff led to increased depression for **CARRIERE.**

67. The Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, subjected Plaintiff to continued harassment due to Plaintiff's required medical monitoring and ultimately Defendant terminated **CARRIERE** for allegedly failing to improve after his July 31, 2016 write up. Defendant cannot possibly have a good faith belief in the stated reason for termination as was more fully discussed supra ¶¶ 29-31.

68. Plaintiff avers that this proffered reason for termination was the pre-textual justification to obscure true discriminatory motives, as was more fully detailed in ¶¶ 58-67 supra.

69. Upon good faith information belief, based on the disparate treatment, harassment, intimidation, targeting, and repeated failure to accommodate his disability; Plaintiff alleges that he was terminated because of his disability in addition to retaliation for raising these issues while under their employ.

70. Wherefore, Plaintiff asks this Honorable Court to find Defendant, Defendant, **BROWN-N-BROWN DOMINO'S PIZZA, LLC**, liable for the violation of the Americans With Disabilities Act (42 USC § 12102 et seq.) ("ADA").

---

## PRAYER

---

**WHEREFORE**, **CARRIERE** requests that this Honorable Court enter judgment against Defendant providing the following relief:

(a) Reasonable attorney's fees under 42 U.S.C. 1988;

(b) Compensatory damages to be determined by a jury of **CARRIERE's** peers after the trial of this matter;

(c) Punitive damages pursuant to 42 U.S.C. 1981;

(d) Any and all other damages as appropriate in this case as allowed by law in the interest of law and equity.

---

## DEMAND FOR JURY TRIAL

---

Pursuant to Rule 38 of Federal Rules of Civil Procedure, **CARRIERE** demands trial by jury in this action of all issues so triable.

**Respectfully Submitted**,

**SUDDUTH & ASSOCIATES, LLC**
Attorneys-at-Law
4216 Lake Street Suite C
Lake Charles, Louisiana 70605
(337) 480 - 0101 (*Telephone*)
(337) 419 - 0507 (*Facsimile*)

BY: *James C. Sudduth, III*

**JAMES E. SUDDUTH, III, #24093227**
Attorney for *Terrance Terrell Carriere*